UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| CHAMBERS OF<br>JAMES K. BREDAR<br>U.S. MAGISTRATE JUDGE | 101 WEST LOMBARD STREET<br>BALTIMORE, MARYLAND 21201<br>(410) 962-0950<br>(410) 962-2985 FAX |

April 29, 2005

Burt M. Kahn, Esquire
Joseph Greenwald and Laake, PA
6404 Ivy Lane, Suite 400
Greenbelt, Maryland 20770

Conrad W. Varner, Esquire
Varner and Goundry, PC
31 West Patrick Street, Suite 100
Frederick, Maryland   21701

Brett D. Weiss, Esquire
Brett Weiss, PC
18200 Littlebrooke Drive
Olney, Maryland   20832

Subject: *Neil Richard Shook, III, et al. v. Wyllys R. Hodges, III, M.D., et al.*
Civil Action No. WDQ-04-2048

Dear Counsel:

This medical malpractice action has been referred to me for disposition of discovery disputes. Pending and ready for disposition is a motion from the plaintiff to compel discovery and for sanctions and appropriate relief.  (Paper No. 19)  No hearing is necessary.  Local Rule 105.6.

At issue is an instruction from defense counsel, Conrad Varner, Esq., to a deponent, Dr. Stephen Shur-Shiang Chu, to not answer a question asked by plaintiff's counsel, Burt Kahn, Esq.  Plaintiff posits that the conduct of defense counsel was in violation of Fed. R. Civ. P. 30 and Guideline 5.d. of the Local Rules of this Court.

Some background is necessary.  According to the complaint, Mary Jean Shook, 44, presented to Western Maryland Health System Memorial Hospital in Cumberland for scheduled laparoscopic gall bladder removal.  She apparently was interviewed pre-operatively by Dr. Chu, a board-certified anesthesiologist employed at the time by Cumberland Anesthesia & Pain Management Associates, who had been assigned to her case.  Dr. Chu is not a defendant in the case, is not identified as an expert in the case and no longer is an employee of the group.  The defendants are the group and another of its anesthesiologists, Dr. Wyllys Hodges.  According to Dr. Chu, whose deposition is at issue in the instant motion, Ms. Shook told him that an earlier shoulder surgery planned for her was cancelled because she presented an airway problem contra-indicating intubation.  She also may have told him that she was taking medication for a recent asthma attack.  Furthermore, his examination of her showed him that her airway

was not visible at all.  Based upon this picture, Dr. Chu testified, he planned to proceed by epidural anesthesia rather than intubating her for the surgery and so advised the patient.  There is some divergence here between the testimony of Dr. Chu and Dr. Hodges as to what happened next.  Dr. Chu says that he was discussing the patient with a nurse in the pre-op unit when Dr. Hodges interjected himself into the conversation and announced that he was going to try to intubate Ms. Shook.  Dr. Hodges apparently avers that Dr. Chu came to him for consultation.  In any case, it seems clear that Dr. Chu left the area and Dr. Hodges began an effort to intubate Ms. Shook.  That attempt began to go awry, Dr. Chu at some point returned to the area, and both of the physicians went to work on Ms. Shook.  Ultimately, it appears that she stopped breathing, and brain damage occurred.  She did not regain consciousness and died of sepsis some weeks later.

Near the close of Dr. Chu's deposition, plaintiff's counsel posed the following question and it led to the colloquy set forth below:

> Q.  Did you form an opinion that day [the day of the incident] as to whether Dr. Hodges complied with the standard of care?
>
> MR. VARNER:  Objection.  Do not answer that question.
>
> MR. KAHN:  If it is not privileged --
>
> MR. VARNER:  Don't you have enough expertise to handle that question --
>
> MR. KAHN:  I got plenty, but I'm entitled to find out.
>
> MR. VARNER:  Forget it.  Go to court.
>
> MR. KAHN:  Let me make my statement so this record is perfectly clear.
>
> MR. VARNER:  Make your statement all you want.
>
> MR. KAHN:  I'm entitled to find out if this physician formulated an impression that day as to whether Dr. Hodges who took over the care of this patient complied with the standard of care or not.
>
> MR. VARNER:  Ask it.  You're not going to get an answer.  Ask it and you'll not get an answer.
>
> MR. KAHN:  I'll point out to you, Conrad, you're not permitted under the Federal rules to direct a witness not to answer a question unless it's to protect a privilege.

>MR. VARNER: That's pretty close though, isn't it?
>
>MR. KAHN: What privilege are you protecting?
>
>MR. VARNER: I'm representing both of these physicians.[1]
>
>MR. KAHN: All right. So? What's the privilege?
>
>MR. VARNER: It's a question of any conversation I may have had with any one of them, for one thing. Second of all, my right to determine who is going to testify on what subjects, it has to do with privilege, work product, if nothing else.

There obviously is no privilege here, and the assertion of privilege is baseless. The question regards the deponent's state of mind prior to any purported representation by counsel. In a burst of candor earlier in the deposition, defense counsel seems to have recognized that distinction:

>Q. . . .Do you have any opinion about that one way or the other?
>
>MR. VARNER: Objection. You mean did he have any opinion at the time? Because I'm not going to let him answer retrospectively. He's not an expert in this case. If you are asking whether he had an opinion at the time, he can answer that.

Moreover, if one were to follow defense counsel's currently stated position to its logical end, one could protect every thing from discovery simply by having a conversation about it with counsel.

Defense counsel also asserts that the question asked by plaintiff's counsel is "beyond the scope" of the deposition, a reference to Guideline 5.d.[2] The Court does not find the question to be "clearly beyond the scope of discovery" and, moreover, does not find it to be of the ilk sought to be addressed by

---

[1] Mr. Varner's purported dual representation of the defendants and of this non-party fact witness who no longer is an employee of the defendant group gives pause, but it is not an issue before the Court and not one that need be addressed in order to decide the issue at bar.

[2] Guideline 5.d. It is presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R. Civ. P. 30(d)(1). However, it is also presumptively improper to ask questions clearly beyond the scope of discovery permitted by Fed. R. Civ. P. 26(b)(1), particularly of a personal nature, and continuing to do so after objection shall be evidence that the deposition is being conducted in bad faith or in such a manner as unreasonably to annoy, embarrass, or oppress the deponent or party, which is prohibited by Fed. R. Civ. P. 30(d)(3).

the guideline. Mr. Varner was allowed to interpose an objection, but his instruction not to answer was out of bounds.

Accordingly, the motion (Paper No.19) is hereby GRANTED. The plaintiff will be permitted to reconvene the deposition of Dr. Chu at the offices of plaintiff's counsel to ask the question at issue in the motion, along with any natural followup questions. The deposition will be limited in time to one hour and will be at the expense of defense counsel. Plaintiff may submit a bill of costs to the Court for the expense of the preparation of the instant motion. The defense is instructed to have no further conversations with Dr. Chu regarding the issues raised by the question at issue until after the reconvened deposition. Plaintiff's counsel will not be permitted, however, to inquire regarding any conversations that already may have occurred between defense counsel and the deponent regarding the issues raised by the question.

**Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an Order.**

Very truly yours,

/s/

James K. Bredar
United States Magistrate Judge


JKB/cw
cc: The Hon. William D. Quarles, Jr.
    Court file
    Chambers file